THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DARK CATT STUDIOS HOLDINGS, INC. and DARK CATT STUDIOS INTERACTIVE LLC, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VALVE CORPORATION,<br><br>Defendant. | CASE NO. C21-0872-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's motion to dismiss (Dkt. Nos. 38, 42). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained below.

I.   BACKGROUND

Plaintiffs Dark Catt Studios Holdings, Inc. and Dark Catt Studios Interactive LLC (collectively "Dark Catt") develop and publish personal computer ("PC") games. (Dkt. No. 1 at 9.) Defendant is the creator of the Steam gaming website, the world's largest PC game distributor. (*Id.* at 10.) Dark Catt alleges in a class action complaint that Defendant utilizes its market power to impose anticompetitive pricing and marketing restrictions on Dark Catt and

similarly situated PC game developers and publishers (collectively "publishers"). (*Id.* at 8–9.) The resulting alleged injuries include, *inter alia*, the payment of supracompetitive fees. (*Id.* at 19.) Dark Catt asserts these practices violate Section 2 of the Sherman Act, along with the Washington Consumer Protection Act ("CPA"). (*Id.* at 44–47.) Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 42.) It argues that Dark Catt fails to allege facts plausibly supporting an antitrust injury, fails to plausibly allege Defendant's market power, and fails to provide facts supporting unlawful antitrust conduct. (*Id.* at 11–29.)

## II. DISCUSSION

### A. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2011), *see* Fed. R. Civ. P. 12(b)(6). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (internal quotation marks and citation omitted); *see Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In reviewing the motion, the Court must accept the truth of the facts alleged and draw all reasonable inferences from those facts in a plaintiff's favor. *Al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). However, allegations must cross "the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 677. To do so, the complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* As a result, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell A. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### B. Injury

To support an antitrust claim, a plaintiff must allege "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Am. Ad Mgt., Inc. v. Gen. Tel. Co. of*

*California*, 190 F.3d 1051, 1055 (9th Cir. 1999). A key consideration here, then, is whether Dark Catt's complaint plausibly alleges injury. (*See* Dkt. No. 42 at 11–18.) As the Court indicates in a similar putative class action, an injury based on the payment of supracompetitive fees cannot be plausibly alleged if the fee charged remains the same when a defendant allegedly controlled the market and when it did not. *See Wolfire Games, LLC, et. al., v. Valve Corporation*, Case No. C21-0563-JCC, Dkt. No. 67 at 6 (W.D. Wash. 2021) (citing *Somers v. Apple, Inc.*, 729 F3d. 953, 964–65 (9th Cir. 2013).

According to this complaint, except for recent volume discounts, Defendant has consistently charged the same 30% supracompetitive fee. (*See* Dkt. No. 1 at 12, 26). However, unlike the *Wolfire* complaint, which the Court dismissed without prejudice, *see Wolfire Games, LLC*, Case No. C21-0563-JCC, Dkt. No. 67 at 8, Dark Catt's complaint does not contain allegations suggesting that, at any point, Defendant was not the market leader for PC game delivery. (*See generally* Dkt. No. 1.) While Defendant asks the Court to infer as much, (*see* Dkt. No. 42 at 13), this would violate the fundamental principle that, at least at this point, reasonable inferences must be drawn in Dark Catt's favor. *Al-Kidd*, 580 F.3d at 956. Turning to the substance of Dark Catt's allegations, the complaint alleges that Defendant's 30% fee is supracompetitive because it is far above what other storefronts charge. (Dkt. No. 1 at 18–19, 40–41.) This is sufficient to allege injury; therefore, the Court need not address Dark Catt's arguments regarding whether non-price injury has been adequately plead.

### C.   Market Power

Defendant next argues that Dark Catt fails to provide sufficient allegations to support its assertions regarding Defendant's market power, specifically its 75% market share. (Dkt. No. 42 at 18–20.) The Court disagrees. According to the complaint, Steam "hold[s] approximately 75% of the global market" which, [i]n 2017 . . . generated over $4 billion worth of sales" and last year "recorded 120 million monthly active players." (Dkt. No. 1 at 5.) As a result, game publishers consistently list their games for sale on Steam "to be where the players are." (*Id.* at 18 (internal

quotation marks and citation omitted).) At this stage in the proceeding, no more is required. *See Newcal Industries, Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008) (indicating that the complaint can be dismissed if the relevant market is "facially unsustainable").

### D.     Alleged Antitrust Conduct

The final issue for the Court's consideration is antitrust conduct. According to the complaint, Defendant engages in the following: (1) uses Steam Keys, which are alphanumeric codes that allow Steam-hosted games to be purchased outside of Steam, to impose anti-competitive terms to game publishers, (2) uses contractual agreements with game publishers whose games are hosted by Steam to impose similar anti-competitive terms to the sale of a publisher's non-Steam hosted games, and (3) controls the game review system within Steam in such a manner so as to punish game publishers who choose to sell games outside of the Steam environment. (Dkt. No. 1 at 6–9.) In moving to dismiss, Defendant argues that none are adequately plead. (Dkt. No. 15–24.)

#### 1.     Steam Keys

Defendant provides game publishers with Steam Keys, which allow for the sale of Steam-hosted versions of games through third-party storefronts. (Dkt. No. 1 at 31.) According to Dark Catt's complaint, Valve tightly controls to whom, how many, and on what terms it provides Steam Keys and, in doing so, engages in anti-competitive conduct. (*Id.* at 31–35.) But Defendant has no duty to deal. *Aerotec Intl., Inc. v. Honeywell Intl., Inc.*, 836 F.3d 1171, 1184 (9th Cir. 2016). So long as it has a valid business reason for the terms it attaches to its Steam Keys, those terms cannot, as a matter of law, represent unlawful antitrade conduct. *Id.* (citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 (1985)). And nothing in Dark Catt's complaint suggests that Defendant's Steam Key terms are irrational. (*See* Dkt. No. 1 at 15–16 (insisting that Steam customers get comparable deals to non-Steam customers).)

#### 2.     Contractual Limitations

Game publishers often create parallel versions of their games—a version to be hosted on

1  Steam and another to be hosted elsewhere. (*See* Dkt. No. 1 at 12–13.) The Steam version is
2  governed by the Steam Distribution Agreement ("SDA"),[1] which requires publishers to offer the
3  most current version of a game and downloadable content ("DLC") on Steam. (*Id.* at 13–19.) The
4  complaint also alleges that the SDA contains (a) anti-competitive exclusivity provisions and (b)
5  price controls, requiring that non-Steam versions of games be sold at the same price as the Steam
6  version. (*See* Dkt. No. 1 at 28–30.) Dark Catt describes these collective requirements as a most-
7  favored-nation ("MFN") provision. (*Id.* at 15.) According to the complaint, the MFN "chills
8  competition between Valve and it rivals by preventing Publishers from offering better deals to
9  consumers through rival distributors." (Dkt. No. 54 at 28.)

10  First, while the SDA does require game publishers to provide Steam customers with the
11  most current version of their games and DLC, nothing in the SDA requires that they be offered at
12  comparable prices. (*See generally* Dkt. No. 40.)[2] Therefore, the complaint's allegations
13  regarding the SDA's price controls are not plausible. *See Steckman v. Hart Brewing Inc.*, 143
14  F.3d 1293, 1295 (9th Cir.1998) (The court is "not required to accept as true conclusory
15  allegations which are contradicted by documents referred to in the complaint.")

16  Second, the Court does not read the SDA as containing an exclusivity provision. Instead,
17  it provides that game publishers may "offer special and unique promotional content through
18  other distribution channels, provided that material parity is maintained between Steam Account
19  Owners and users of other distribution channels who make a comparable investment in the
20  Application and the associated DLC." (Dkt. No. 40 at 4.) And in any case, according to the
21  complaint, exclusive offerings are common in the industry. (*See* Dkt. No. 1 at 17, 30, 34, 36, 37,
22  39.) Therefore, it would seem implausible that such agreements could constitute anti-competitive

---

[1] While the SDA was not attached to the complaint, it is frequently referenced by it, (*see* Dkt. No. 1 at 9–14, 19, 27–28, 30–31, 39–42, 44–47), and, therefore, is effectively "incorporated by reference" into the complaint. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

[2] Defendant provided the Court with a copy of the SDA (Dkt. No. 40), which Dark Catt does not challenge the authenticity of. (*See* Dkt. No. 54 at 27.)

1 conduct.

2   Third, the SDA's requirement that Steam customers receive the most current version of a game and DLC, like any contractual term, is only anti-competitive if not supported by a valid business reason. *See Verizon Commun. Inc. v. L. Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 411 (2004) (no duty to aid competitors). Here, it stands to reason that Steam would expect its customers to receive a comparable product to that offered through other storefronts. This is a basic business principle. *See William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009) (antitrust claim must be "'plausible' in light of basic economic principles." (quoting *Twombly*, 550 U.S. at 556).)

### 3. Game Reviews

  Finally, the complaint alleges that Defendant manages the game review system in a manner so as to further its anticompetitive efforts. (Dkt. No. 1 at 35–40.) According to the complaint, Defendant uses the game review system, which it hosts, to penalize publishers who choose to sell a particular game exclusively through another storefront. (*Id.*) But it is not clear how the resulting harms would "flow[] from that which makes the conduct unlawful" or represent "the type [of conduct] the antitrust laws [a]re intended to prevent." *Am. Ad Mgt., Inc.*, 190 F.3d at 1055.

  To summarize: Dark Catt's complaint plausibly alleges an injury and plausibly alleges that Defendant holds market power, but it fails to allege unlawful antitrust conduct. Therefore, it fails to adequately plead a violation of Section 2 of the Sherman Act or a violation of the CPA.

## III. CONCLUSION

  For the foregoing reasons, Defendant's motion to dismiss (Dkt. Nos. 38, 42) is GRANTED in part and DENIED in part. Plaintiffs' complaint is DISMISSED without prejudice and with leave to amend.[3] An amended complaint, addressing the infirmities described above, as

---

[3] Plaintiffs did not affirmatively seek leave to amend. (*See generally* Dkt. No. 54.) Nevertheless, the Court GRANTS Plaintiffs leave to do so pursuant to Federal Rule of Civil

well as any other changes it elects to make, may be filed within thirty (30) days of this order. If no such amendment is filed, the Clerk is DIRECTED to close this case.

DATED this 19th day of November 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

Procedure 15(a)(2) because it is not yet clear that such amendment would be futile. *See Thinket Ink Info. Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).