The Honorable John C. Coughenour

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

10

11   DARK CATT STUDIOS HOLDINGS, INC.,
     a Delaware corporation, and DARK CATT
12   STUDIOS INTERACTIVE LLC, an Illinois
     limited liability company, on behalf of
13   themselves and all others similarly situated,

14                                    Plaintiffs,

15

16         v.

17   VALVE CORPORATION, a Washington
     corporation,
18
                                     Defendant.
19

Case No. 2:21-cv-00872-JCC

**DEFENDANT VALVE CORPORATION'S
REPLY IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' AMENDED
CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF**

**NOTE ON MOTION CALENDAR:
APRIL 8, 2022**

20

21

22

23

24

25

26

**Page(s)**

## Table of Contents

I.    INTRODUCTION ........................................................................................................... 1

II.   DARK CATT STILL FAILS TO ALLEGE VALVE'S AGREEMENTS WITH
      DEVELOPERS VIOLATE THE ANTITRUST LAWS. ................................................ 2

III.  DARK CATT FAILS TO ALLEGE THAT VALVE'S FREE STEAM KEYS
      PROGRAM VIOLATES THE ANTITRUST LAWS. ..................................................... 6

IV.   DARK CATT FAILS TO ALLEGE THAT CUSTOMER REVIEWS VIOLATE
      THE ANTITRUST LAWS. ........................................................................................... 8

V.    DARK CATT'S AMENDED COMPLAINT NO LONGER ALLEGES
      ANTITRUST INJURY. ............................................................................................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS
ACTION COMPLAINT – (2:21-CV-00872-JCC) - i

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
  472 U.S. 585 (1985)...................................................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................5

*Frame-Wilson v. Amazon.com, Inc.*,
  2022 WL 741878 (W.D. Wash. Mar. 11, 2022) ....................................................5, 6

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ...................................................................................5, 9

*NCAA v. Alston*,
  141 S. Ct. 2141 (2021)............................................................................................9, 10

*Olympia Equip. Leasing Co. v. W. Union Tel. Co.*,
  797 F.2d 370 (7th Cir. 1986) .......................................................................................7

*Park v. Thompson*,
  851 F.3d 910 (9th Cir. 2017) .......................................................................................8

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) ........................................................................10, 11, 12

*Staley v. Gilead Scis. Inc.*,
  446 F. Supp. 3d 578 (N.D. Cal 2020) .........................................................................5

*Tubbs v. AdvoCare Int'l, L.P.*,
  2017 WL 11630768 (C.D. Cal. Dec. 12, 2017) ..........................................................5

*William O. Gilley Enters. v. Atl. Richfield Co.*,
  588 F.3d 659 (9th Cir. 2009) .....................................................................................11

*Wolfire Games, LLC v. Valve Corp.*,
  No. C21-0563-JCC (W.D. Wash. Nov. 19, 2021) ...............................................10, 12

**Statutes**

15 U.S.C. § 15b.................................................................................................................11

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS
ACTION COMPLAINT – (2:21-CV-00872-JCC) – ii

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## I.  __INTRODUCTION__

Valve's Motion (Dkt. 64, "Mot.") identified the new allegations in Dark Catt's Amended Complaint (Dkt. 57, "Am. Compl.") and explained why they failed to overcome any of the shortcomings the Court identified when dismissing its initial Complaint (Dkt. 1). Indeed, Valve explained how the changes added a *new* basis for dismissing the Amended Complaint that the Court had rejected in Valve's initial Motion to Dismiss (Dkt. 38): the admission that Valve's allegedly supracompetitive commission rate was in place for *twelve years* before Dark Catt says Valve acquired market power. Mot. at 4, 20–22. Dark Catt's Opposition (Dkt. 66, "Opp.") does not even distinguish between its old and new allegations, let alone explain how any new allegations cure the initial Complaint's shortcomings; instead, it recycles old themes, misconstrues Valve's explanations of the Amended Complaint's deficiencies, and cites case law out of context. Once one sets aside these distractions, the fundamental point is clear: the same issues that doomed Dark Catt's initial Complaint persist and warrant dismissal of the Amended Complaint.

*First*, Dark Catt tries to establish that Valve's agreements with developers are anti-competitive by asserting they mean (or might mean) something other than what they plainly say. But the Court has already reviewed, understood, and determined that these contractual terms, as alleged, do not implicate anticompetitive conduct. And Dark Catt's Opposition fails to identify any facts in its Amended Complaint that plausibly allege that an *unwritten* anticompetitive policy exists or, if it did, that Dark Catt has been harmed by it, much less that it resulted in any market-wide injury.

*Second*, Dark Catt rests its argument that Valve's use of Steam Keys is anticompetitive on the same allegations that were in its initial Complaint. Dark Catt labels Valve's practices as "anticompetitive" and "exclusionary," but in reality this is only a thinly veiled attempt to impose Dark Catt's preferences on Valve's business decisions. Valve's use of Steam Keys is still not plausibly alleged to be anticompetitive.

*Third*, Dark Catt attacks consumer reviews posted on the Steam website by asserting they

Fox Rothschild LLP
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

present a "threat" that keeps Publishers compliant with Valve's terms. But Dark Catt still fails to identify harms to either *itself* or *competition* resulting from the consumer reviews, and even fails to allege any act of Valve encouraging negative reviews at all. Dark Catt all but concedes Steam's review policies are not "a standalone antitrust violation." As before, Dark Catt's theory improperly invites this Court to police consumer reviews.

*Finally*, Dark Catt has no good response to Valve's showing that the Amended Complaint now admits Valve's commission was 30% for twelve years before it allegedly acquired market power. The Court noted this was missing from the original Complaint when it declined to dismiss the original Complaint under *Somers v. Apple, Inc*. Dkt. 56 ("Order") at 3. In its Opposition, Dark Catt tries to walk back its new allegations, which it of course cannot do. Those changes give the Court a new basis for dismissing the Amended Complaint.

In short, the Opposition proves that Dark Catt cannot fix the deficiencies the Court identified in dismissing the original Complaint. The Court should not give Dark Catt another opportunity, and should dismiss the Amended Complaint with prejudice.

## II.   DARK CATT STILL FAILS TO ALLEGE VALVE'S AGREEMENTS WITH DEVELOPERS VIOLATE THE ANTITRUST LAWS.

Dark Catt's Opposition confirms that its theory of Valve's "anticompetitive MFN" relies on terms that the Court has already analyzed and found lawful. *See* Opp. at 6 ("Valve's SDA and Steamworks Documentation impose an MFN on pricing and availability in the market for PC game distribution."). These terms, which Dark Catt's Amended Complaint and Opposition quote extensively, *see* Am. Compl. ¶¶ 128, 131, 135; Opp. at 6–8, have not changed. As the Court ruled, they do not require developers to charge the same price for Steam-enabled games as they charge for other games. Order at 5. Nor do they impose an exclusivity provision. *Id.* In substance, the Court has already rejected Dark Catt's arguments.

Instead, Valve's terms merely ensure, for downloadable content ("DLC") and game versions, that Valve's customers "receive a comparable product to that offered through other storefronts," *id.* at 6, and for games, that customers who purchase a Steam-enabled game from

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS
ACTION COMPLAINT – (2:21-CV-00872-JCC) - 2

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

1   the Steam store pay no more than customers purchasing the same Steam-enabled game using

2   Steam Keys. Am. Compl. ¶ 135. As the Court rightly held, Valve has "no duty to aid

3   competitors," Order at 6 (citing *Verizon Comm'n Inc. v. Law Offices of Curtis V. Trinko, LLP*,

4   540 U.S. 398, 411 (2004)), and Valve's expectation that "its customers [should] receive a

5   comparable product to that offered through other storefronts" accords with "basic business

6   principle[s]," *id.* (citing *William O. Gilley Enters. v. Atl. Richfield Co*., 588 F.3d 659, 662 (9th

7   Cir. 2009)). Dark Catt's allegations do not plausibly support a claim of anticompetitive conduct.

8        Dark Catt's Opposition highlights terms it claims "corroborate the existence of the

9   [alleged] pricing MFN," Opp. at 7—or, at least, create an "ambiguity," *id.* at 9, that must be

10  resolved in its favor. But bald assertion cannot obscure what Steam's terms actually say and what

11  they plainly mean. The Court reviewed those terms once and rejected Dark Catt's implausible

12  interpretation at the pleading stage. It should do so again.

13       Because Dark Catt grounds its theory in the SDA and Steam Key Guidelines, its

14  fundamental misreading of these documents guts its allegation that Valve enforces an

15  "anticompetitive MFN." *See* Opp. at 6 (asserting, as its introductory statement, that "Valve's

16  SDA and Steamworks Documentation *impose*" the alleged MFN (emphasis added)). To the

17  extent Dark Catt's remaining allegations suggest Valve imposes an anticompetitive MFN that,

18  through its "operation and impact," *id.* at 9, flouts the express terms of these documents, they are

19  still not well-pled. Dark Catt's allegations comprise a scattershot array of assertions that fail to

20  *plausibly* allege *facts* that establish Valve promulgated and enforced, class-wide, an unwritten

21  shadow policy to prevent a non-Steam-enabled game version or DLC from being sold for less

22  than the Steam-enabled version.

23       Instead, Dark Catt points to immaterial statements made by third parties. Specifically,

24  Dark Catt offers two blog posts that purport to describe what unidentified Valve representatives

25  said about its pricing policy—an anonymous post on Reddit, Am. Compl. ¶ 148, and another by

26  Wolfire's CEO advertising that company's class action suit, Am. Compl. ¶ 147—and a

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS
ACTION COMPLAINT – (2:21-CV-00872-JCC) - 3

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

competitor's Tweet stating, without any facts, his view of the policy, Am. Compl. ¶ 145. Dark

Catt also points to irrelevant analyses of an MFN from a different and unrelated market, Am.

Compl. ¶ 120, and the game prices and commission rate of a competitor that make no mention of

any MFN, Am. Compl. ¶ 146. None of these allegations establish the existence of an

anticompetitive MFN, much less plausibly plead enforcement of such a provision.

Finally, Dark Catt misleadingly refers to action that Valve took with respect to Dark Catt

after it offered one of its games "'for a temporary lower price' on a third-party store." Opp. at 6–

7; Am. Compl. ¶ 149. But the Amended Complaint never says Valve's decision had anything to

do with pricing. And even if it had plausibly alleged some sort of connection, which it did not,

the Amended Complaint clarifies that Dark Catt was attempting to sell *a Steam-enabled version*

of its game (using Steam Keys) at a lower price than it offered Steam customers on Steam. Am.

Compl. ¶ 172. Dark Catt concedes, in other words, that this could not have been an

anticompetitive attempt to affect the pricing of non-Steam-enabled games played on competing

platforms. It was (at worst) a straightforward application of Valve's Steam Keys policies. The

Court has already ruled that those alleged policies are a lawful exercise of Valve's rights. Order

at 4. Dark Catt fails to allege a single instance in which Valve enforced the averred but unwritten

"anticompetitive MFN" against Dark Catt or any other developer for supposedly limiting its

prices for non-Steam-enabled games.

The remaining allegations cited in the Opposition at 7–9 are a series of conclusory

assertions that offer no facts, contradict the SDA or Steam Key Guidelines, or merely allege that

Valve appropriately enforces them according to their terms. *See, e.g.*, Am. Compl. ¶¶ 80 ("Valve

prohibits Dark Catt and Publishers from entering into agreements with other stores to sell their

games or DLC at lower prices than those offered through the Steam store or from engaging in

exclusives"); 119 ("Rather than ensuring its customers the lowest prices, Valve's MFN results in

higher prices paid by its PC gaming customers and/or reductions in output and/or quality of

games."); 124 ("Under the [SDA's] Delivery clause, Developers are unable to offer a new game,

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS
ACTION COMPLAINT – (2:21-CV-00872-JCC) - 4

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

1  update, or add-on through a third-party store before delivering that application to Steam.").

2  These assertions do not satisfy the requirements of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544

3  (2007). As noted in Valve's opening brief, they were largely before the Court when it granted

4  Valve's first motion to dismiss. They should have the same impact here: none.

5      Dark Catt wrongly argues that Valve quibbles with the truth of its allegations. In fact,

6  Valve took all of the factual allegations as true, and explained how Dark Catt still failed to

7  plausibly allege any anticompetitive conduct associated with Valve's terms or any impact those

8  terms had on Dark Catt itself. *See* Mot. at 13–16 (discussing, *inter alia*, lack of impact from a

9  rival CEO's Tweet about what Valve "can" do). To the extent Valve noted non-pled portions of

10  the documents Dark Catt cited to support its claims (such as rebuttals posted on the website for

11  the Tweet), this properly corrected Dark Catt's selective pleading, which "omit[ed] portions …

12  that weaken[ed]—or doom[ed]—[its] claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d

13  988, 1002 (9th Cir. 2018); *see also Tubbs v. AdvoCare Int'l, L.P.*, 2017 WL 11630768, at *3

14  (C.D. Cal. Dec. 12, 2017) (incorporating blog posts referenced in complaint).

15      Ironically, one of the cases Dark Catt highlights to justify how it has pled the existence of

16  an anticompetitive MFN, *Staley v. Gilead Scis. Inc.*, 446 F. Supp. 3d 578 (N.D. Cal 2020),

17  highlights its failing. In *Staley*, purchasers alleged in detail the specific anticompetitive features

18  and impacts of a drug manufacturer's conduct, including agreements with various entities that

19  were intended to prevent certain HIV medications from being challenged by generics upon the

20  expiration of its patent. *See id.* at 587–91. Dark Catt's Amended Complaint, lacking any

21  plausible reference to anticompetitive conduct, does not compare.

22      Grasping to support its assertion that Valve's terms qualify as an anticompetitive MFN,

23  Dark Catt submitted *Frame-Wilson v. Amazon.com, Inc.*, 2022 WL 741878 (W.D. Wash. Mar.

24  11, 2022), as supplemental authority. Dkt. 68. But *Frame-Wilson* differs from this case in two

25  critical respects. First, as Judge Jones emphasized in his opinion, Amazon had a written policy

26  "requir[ing] that sellers sell their products on Amazon.com for a price that is equal to or lower

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS
ACTION COMPLAINT – (2:21-CV-00872-JCC) - 5

than the price they sell the same products on other platforms." *Frame-Wilson*, 2022 WL 741878, at *11; *see Frame-Wilson v. Amazon.com, Inc.,* No. 2:20-cv-00424-RAJ, Mot. to Dismiss at 6, Dkt. 18 (W.D. Wash.) (admitting "Amazon maintains a 'fair pricing' policy, published on its website" and may "terminate selling privileges in its store …. [for] '[s]etting a price on a product or service that is significantly higher than recent prices offered … off Amazon.'"). Second, all 21 of *Frame-Wilson*'s plaintiffs alleged specific facts—dates, dollar amounts, and products—to support their antitrust injury claims, *see Frame-Wilson*, Am. Compl. ¶¶ 46–66, Dkt. 15, and alleged that a specific merchant would have sold a $150 toy for $40 less on a non-Amazon storefront but for Amazon's policy, *Frame-Wilson*, 2022 WL 741878 at *2, 12.

By contrast, Valve has no such price parity provision in its agreements, nor has Dark Catt alleged *any* facts to plausibly allege that Valve ever enforced an unpublished anticompetitive policy against it or anyone else. Dark Catt can only point to statements by third parties describing what unidentified Valve representatives supposedly said. *Frame-Wilson* only confirms such allegations are insufficient.

### III. DARK CATT FAILS TO ALLEGE THAT VALVE'S FREE STEAM KEYS PROGRAM VIOLATES THE ANTITRUST LAWS.

In its Order dismissing Dark Catt's initial Complaint, the Court found that Valve had no duty to deal with game developers on terms they prefer, and "[s]o long as it has a valid business reason for the terms it attaches to its Steam Keys, those terms cannot, as a matter of law, represent unlawful antitrade conduct." Order at 4 (citing *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1184 (9th Cir. 2016) (citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985))). Reviewing the initial Complaint, the Court concluded that "nothing in Dark Catt's complaint suggests that Defendant's Steam Key terms are irrational." *Id.* (citing Dkt. 1 at 15–16). The Court accordingly ruled that Dark Catt failed to allege that Valve's Steam Keys program violated the antitrust laws.

Nothing Dark Catt points to in the Amended Complaint disturbs the Court's conclusion. Dark Catt has not plausibly alleged that Valve engages in exclusionary conduct. In fact, while

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS
ACTION COMPLAINT – (2:21-CV-00872-JCC) - 6

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

1   Dark Catt expressly concedes that it isn't making a refusal-to-deal claim, Opp. at 16 ("Dark Catt

2   Does Not Allege a Duty to Deal Theory"), and actually abandons *Aspen Skiing Co.*, on which it

3   relied last time (Dkt. 54 at 20), each of the alleged anticompetitive practices relating to Steam

4   Keys would be cured only if Valve agreed to provide Steam Keys on Dark Catt's preferred

5   terms. But as the Court found, Valve has legitimate, rational business reasons for structuring and

6   operating its free Steam Keys program as alleged, Order at 4 (recognizing as rational "that Steam

7   customers get comparable deals to non-Steam customers"). Dark Catt alleges very little not

8   already in its initial Complaint, and cannot run away from the Court's basic holding that Steam

9   Keys are not plausibly alleged to violate the antitrust laws. Relabeling its Steam Keys allegations

10  as prohibited "exclusionary conduct" instead of a lawful refusal to deal does not convert them

11  into an actionable claim.

12      Turning to specific examples, Dark Catt alleges that Valve delayed its Steam Keys and

13  "banned" it from Steam sometime after Dark Catt decided to sell its game, using Steam Keys, via

14  Humble Bundle at a lower price than on Steam. Am. Compl. ¶ 172; Opp. at 14. It further alleges

15  that another developer, Studio Wildcard, could not obtain Steam Keys to enable it to sell at a

16  discount through Humble Bundle in the summer of 2020. Am. Compl. ¶ 174; Opp. at 14. And it

17  claims that Idalgame could not get Steam Keys or access Steam for similar reasons. Am. Compl.

18  ¶ 176; Opp. at 14.

19      While Dark Catt paints these allegations as "exclusionary conduct" that cuts competitors

20  out of the alleged market for PC game distribution, the core of Dark Catt's allegations is that

21  Valve denied Steam Keys to it and the other two developers—*i.e.*, refused to deal with them on

22  terms they preferred—because they violated the Steam Keys Guidelines. But a firm, whether it

23  has monopoly power or not, "has no general duty to help its competitors, whether by holding a

24  price umbrella over their heads or by otherwise pulling its competitive punches" or "to reduce its

25  prices in order … to extend a helping hand to new entrants." *Olympia Equip. Leasing Co. v. W.*

26  *Union Tel. Co.*, 797 F.2d 370, 375–76 (7th Cir. 1986) (Posner, J.).

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS
ACTION COMPLAINT – (2:21-CV-00872-JCC) - 7

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

Implicitly acknowledging the weakness of each individual argument about Steam Keys, Dark Catt encourages the Court to consider their combined impact, as if that would somehow transform Valve's lawful actions into an antitrust violation. Opp. at 11. But whether considered individually or in the aggregate, Dark Catt's Steam Keys allegations are no more than a claim of refusing to deal on terms it prefers. Valve has no duty to deal on Dark Catt's terms and can structure the Steam Keys program in line with its legitimate business interests. Dark Catt has alleged nothing to change the Court's prior conclusion to that effect, and the Court should accordingly rule that Dark Catt fails to allege that Steam Keys violate the antitrust laws.

## IV.   DARK CATT FAILS TO ALLEGE THAT CUSTOMER REVIEWS VIOLATE THE ANTITRUST LAWS.

The Court previously rejected Dark Catt's attempt to allege plausible antitrust claims arising from negative reviews that consumers post on Steam, because Dark Catt failed to explain how they constituted anticompetitive conduct—a tough hurdle to overcome given that Dark Catt fails to identify any act of Valve actually encouraging or even suggesting that consumers should publish such reviews—or how any of its alleged antitrust injuries flowed from them. Order at 6. Dark Catt's Opposition all but concedes this point by arguing that the Court should not view the allegations related to reviews as "a standalone antitrust violation." Opp. at 17. Instead, it encourages the Court to look to "the entire factual context," quoting a case where a plaintiff brought section 1983 and civil conspiracy claims for violations of Sixth and Fourteenth Amendment rights. *See Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017).

But in *Park*, the court held that the plaintiff—who alleged that officials had conspired to intimidate and prevent a critical witness from testifying on her behalf while on trial for murder— had properly alleged a conspiracy claim because the complaint included facts reflecting several officials' concerted actions (like suspiciously timed decisions to bring, then dismiss, felony charges against the witness). *Id.* at 928–29. Here, by contrast, Dark Catt still fails to plead any facts from which the Court could plausibly infer that Valve's provision of a forum for consumer reviews involves anticompetitive conduct or that Dark Catt suffered any resulting antitrust

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS
ACTION COMPLAINT – (2:21-CV-00872-JCC) - 8

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

injury. Indeed, Dark Catt fails to identify a single example of Valve so much as suggesting that consumers should publish negative reviews. In the few episodes Dark Catt describes, Valve either plays no role at all, Am. Compl. ¶¶ 185–86, 197, or is implausibly linked by a single statement in which it criticized a competitor's tactics but never mentioned, let alone encouraged, any reviews, negative or otherwise, *id.* ¶¶ 181–84.

Dark Catt's Opposition confirms this failing. All Dark Catt can offer is a self-serving conclusion that Valve "uses the review system to 'keep[] Publishers compliant with Valve's price parity and marketing restrictions MFN,'" Opp. at 17 (quoting Am. Compl. ¶ 180), and a series of statements about the harms that developers—though not Dark Catt—allegedly suffer when they receive negative consumer reviews. *Id.* at 17–18. But Dark Catt fails to identify harms to *itself* or *competition* resulting from the consumer reviews. And it again fails to explain how Valve involves itself in consumer reviews at all.

The rest of Dark Catt's Opposition raises red herrings attempting to refute arguments in Valve's Motion. First, Dark Catt again wrongly describes Valve's critique of its pleading—here, paragraphs 181–82—as an attempt to dispute facts. Instead, Valve pointed out that Dark Catt's description of Valve's "involvement" in a specific episode, even when taken as true, was too attenuated and immaterial to support its legal claim. Second, Dark Catt inappropriately criticizes Valve for quoting from the same article Dark Catt quoted in its Complaint. Am. Compl. ¶ 19 & n.3. Valve did so not to dispute facts but to prevent Dark Catt from again "omitting portions" of supporting documents "that weaken—or doom—[its] claims." *See Khoja*, 899 F.3d at 1002.

Finally, Dark Catt challenges Valve's citation to *NCAA v. Alston*, 141 S. Ct. 2141 (2021), by distinguishing the case's specific holding on the merits. Opp. at 18–19. But this critique is inapt because Valve cited *Alston* for the principle (advocated by even the losing side in that case) that "antitrust courts must give wide berth to business judgments before finding liability." *Alston*, 141 S. Ct. at 2163. That warning applies with full force here, because, as the Court recognized, *see* Order at 6, nothing in Dark Catt's review allegations suggests an antitrust issue. Instead,

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS
ACTION COMPLAINT – (2:21-CV-00872-JCC) - 9

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
206.624.3600

Dark Catt invites this Court to police Valve's business judgments concerning consumer review policies, precisely the sort of judgments that the Supreme Court warned against in *Alston*.

Dark Catt cannot clarify how reviews "not posted by Valve itself," Am. Compl. ¶ 196, but from an "online community," Am. Compl. ¶ 180, should qualify as Valve's anticompetitive conduct. There remains no antitrust claim tied to Valve's user review system.

## V.   DARK CATT'S AMENDED COMPLAINT NO LONGER ALLEGES ANTITRUST INJURY.

In its order dismissing Wolfire's Complaint, the Court ruled that Wolfire failed to allege antitrust injury because Valve had consistently charged a 30% commission beginning nearly twenty years ago, when it first entered the market and twelve years before it allegedly became "dominant." *Wolfire Games, LLC v. Valve Corp.*, No. C21-0563-JCC, Dkt. 67 at 6 (W.D. Wash. Nov. 19, 2021). As the Court explained, "an injury based on the payment of supracompetitive fees cannot be plausibly alleged if the fee charged remains the same when a defendant allegedly controlled the market and when it did not." Order at 3 (citing *Wolfire*, Dkt. 67 at 6, and *Somers v. Apple, Inc.*, 729 F.3d 953, 964–65 (9th Cir. 2013)). Here, in contrast, the Court declined to dismiss Dark Catt's action, because Dark Catt's Complaint avoided any "allegations suggesting that, at any point, Defendant was not the market leader for PC game delivery." *Id*. Therefore, based on the allegations before it, the Court was unwilling to infer that Valve had charged 30% before—in fact long before—it allegedly acquired market power. *Id.*

Dark Catt's Amended Complaint breaks the silence. As Valve showed in the Motion, Dark Catt now alleges facts establishing Valve first charged the 30% commission when it first made Steam available to third-party developers shortly after launching Steam in 2003 and had no market share, and maintained the 30% rate until it lowered rates for high-volume games in 2018. Mot. at 20–22. In its Opposition, Dark Catt tries to run from its allegations but it cannot: the allegations of the Amended Complaint put its case squarely within *Somers*, and for that reason alone the Court should dismiss for failure to allege antitrust injury.

In its Opposition, Dark Catt asserts that "[t]he Amended Complaint does not include

factual allegations about the structure of the PC game distribution market in 2004, Valve's

commission then, or Valve's market presence." Opp. at 22. But that assertion is incorrect as

Valve's citations to the Amended Complaint show: Dark Catt alleged that Valve launched Steam

in 2003, Am. Compl. ¶ 3, and "originally set its [30%] commission rate based on the rate

charged decades ago by large media companies … ," *id.* ¶ 201. *See* Mot. at 20–21. While Dark

Catt may be literally correct to say that the Amended Complaint "does not allege that Valve *ever*

lacked market power," Opp. at 22, Dark Catt must live with its allegation that Valve *entered* the

market in 2003, when by definition Valve had zero market share. And according to the Amended

Complaint it was not until eight years later, in 2011, that Valve's market share allegedly reached

50%. Am. Comp. ¶ 46 ("market share was 'half to 70%'" in 2011); Opp. at 21–22 ("Valve had at

least 50% to 70% market power dating back to 2011").[1]

       Dark Catt cannot escape the undeniable inference from its allegations that Valve started

from scratch in PC game distribution when it launched Steam in 2003. Nor can Dark Catt avoid

its allegations by claiming that its "focus" is on what occurred during the class period nearly 15

years later. Opp. at 22. The class period's April 2017 start date, Am. Compl. § 256, is an artifact

of the four-year antitrust statute of limitations. *See* 15 U.S.C. § 15b. But Dark Catt's allegations,

which extend back to 2003, fail to plead antitrust injury when viewed through the prism of

*Somers*. *See Somers*, 729 F.3d at 957 & n.2, 964 (highlighting Apple's 99-cent price when it

entered the market in April 2003 notwithstanding that the plaintiff's proposed class period for

damages commenced on December 31, 2003). On the allegations in the Amended Complaint,

Valve's 30% commission persisted for years when it lacked market power, and that squarely

---

[1] Dark Catt quotes the Ninth Circuit's opinion in *Gilley*, 588 F.3d at 662, for the proposition that
on a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the
light most favorable to the non-moving party." That unremarkable statement, which in *Gilley* is
immediately followed by the Ninth Circuit's directive that "[o]n a motion to dismiss in an
antitrust case, a court must determine whether an antitrust claim is 'plausible' in light of basic
economic principles," *id.* (citing *Twombly*, 550 U.S. at 556), is of no help to Dark Catt: Valve's
argument under *Somers* is based on what Dark Catt alleges and the undeniable inferences to be
drawn from them. Valve has not spun Dark Catt's allegations in contravention of *Gilley*; it has,
rather, shown how the allegations fail to state a plausible claim.

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

1   places this case—like Wolfire's—within *Somers*. The Court should accordingly dismiss.

2   Dark Catt also tries to rescue its fatal market-structure and market-share allegations by

3   twisting *Somers* into a case requiring examination of a defendant's conduct after it loses market

4   power. But that argument falls flat as well. Dark Catt argues that Somers failed to establish

5   antitrust injury in part because Apple's music prices did not decline "even after Apple's

6   monopoly ended." Opp. at 22 (quoting *Somers*, 729 F.3d at 964). But *Somers* does not *require*

7   that the monopoly end in order to determine whether a plaintiff has alleged antitrust injury: the

8   dispositive criterion is whether the defendant "continuously charged the same price …

9   irrespective of the absence or presence of a competitor." *Somers*, 729 F.3d at 964. The Court

10  dismissed Wolfire's initial Complaint for just that reason, on grounds that Valve charged 30%

11  before and after it allegedly acquired market power. *Wolfire*, Dkt. 67 at 6–7. The result should be

12  the same here.

13  Finally, Dark Catt's last point—that "Valve does not set prices to consumers as Apple did

14  in determining the generally applicable price for digital song downloads," Opp. at 22—is a

15  distinction without a difference. The relevant prices at issue are, on the one hand, Valve's

16  commission rate, and, on the other, Apple's song prices. Both were set by the defendants, and

17  Dark Catt claims the defendants' alleged contractual restrictions had the same effect: "preventing

18  the type of price competition that Somers alleged." *Id*. Dark Catt describes nothing here to take

19  its case out of *Somers*.[2]

20  **VI.    CONCLUSION**

21  For all of these reasons, Valve respectfully requests that the Court dismiss the Amended

22  Complaint with prejudice.

23

24  [2] Dark Catt half-heartedly tries to rehabilitate its non-price-harm theory, but its Opposition shows that the Amended Complaint rests on conclusory allegations and speculation about what "could"

25  happen. Opp. at 23. And Dark Catt's allegations actually undermine its theory. For example, Dark Catt asserts that Valve prevents developers from using exclusives, yet according to the

26  Amended Complaint, exclusives are exactly what Epic uses "to compete against" Valve's alleged monopoly. Am. Compl. ¶ 243. Dark Catt alleges no plausible non-price harms.

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS
ACTION COMPLAINT – (2:21-CV-00872-JCC) - 12

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

DATED this 8th day of April, 2022.

FOX ROTHSCHILD LLP

*s/ Gavin W. Skok*
Gavin W. Skok, WSBA #29766
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154
Telephone:     206.624.3600
Facsimile:     206.389.1708
E-mail:        gskok@foxrothschild.com


MONTGOMERY McCRACKEN WALKER &
RHOADS LLP


*s/ Charles B. Casper*
Charles B. Casper, *admitted pro hac vice*
1735 Market Street, 21st Floor
Philadelphia, PA  19103
Telephone:     215.772.1500
Facsimile:     215.772.7620
Email:         ccasper@mmwr.com

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS
ACTION COMPLAINT – (2:21-CV-00872-JCC) - 13

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

## CERTIFICATE OF SERVICE

I certify that I am a secretary at the law firm of Fox Rothschild LLP in Seattle, Washington. I am a U.S. citizen over the age of eighteen years and not a party to the within cause. On the date shown below, I caused to be served a true and correct copy of the foregoing on counsel of record for all other parties to this action as indicated below:

## Service List

Stephanie L. Jensen
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500
Facsimile: (206) 883-2699
Email: sjensen@wsgr.com

☐ Via US Mail
☐ Via Messenger
☒ Via CM/ECF / Email
☐ Via over-night delivery

Kenneth R. O'Rourke
Scott A. Sher
Allison B. Smith
WILSON SONSINI GOODRICH & ROSATI, P.C.
1700 K Street, NW, Suite 500
Washington, DC 20006
Telephone: (202) 973-8800
Facsimile: (202) 973-8899
Email: korourke@wsgr.com
ssher@wsgr.com; allison.smith@wsgr.com

W. Joseph Bruckner
Joseph C. Bourne
Leona B. Ajavon
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
Email: wjbruckner@locklaw.com;
jcboume@locklaw.com;
lbajavon@locklaw.com

*Attorneys for Plaintiffs*

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS
ACTION COMPLAINT – (2:21-CV-00872-JCC) - 14

132454060.1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4500
SEATTLE, WA 98154
206.624.3600

1    I declare under penalty of perjury that the foregoing is true and correct.

2    EXECUTED this 8th day of April, 2022, in Puyallup, Washington.

3

4                                                      _Courtney Brooks_
                                                       Courtney R. Brooks
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPLY ISO DEFENDANT VALVE CORPORATION'S
MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS
ACTION COMPLAINT – (2:21-CV-00872-JCC) - 15

130007188.1
132454060.1